## Case No. 9,572.

### MILLER v. HALSTED.[1]

District Court, D. New Jersey. Nov. 2, 1872.

CORPORATIONS—LOAN BY DIRECTOR —MORTGAGE—BANKRUPTCY—ASSIGNEE—OBJECTION—TEMPORARY EMBARRASSMENT—INSOLVENCY.

[1. A loan to a corporation by a director thereof, and the giving of a mortgage to secure the same. is not within the rule prohibiting contracts by a trustee with himself in relation to the property held by him in trust.]

[2. An assignee in bankruptcy of a corporation will not be heard in a court of equity to object to a contract made by the corporation with one of the directors, unless he offers to return to the director his advances under the contract.]

[3. A mortgage given by a corporation to secure advances from one of its directors is not invalid merely because the advances were applied to the payment of debts for which the director was security.]

[4. Temporary embarrassment is not "insolvency" within Act N. J. April 15, 1846, § 2, prohibiting insolvent corporations from making contracts.]

[Appeal from the district court of the United States for the district of New Jersey.]

[This was a suit by Elias N. Miller, assignee in bankruptcy, against N. N. Halsted, to have a certain mortgage given by the bankrupt declared void. The district court rendered a decree for respondent. The assignee appeals.]

STRONG, Circuit Justice. Notwithstanding the very thorough argument which has been submitted to me in support of this appeal, my opinion accords so nearly with that of the district court that I deem it unnecessary to discuss at length the question involved in the case. I shall content myself therefore with presenting some considerations in addition to those which governed the action of the district judge; considerations which lead me to the same conclusion as that at which he arrived.

That the chattel mortgage given by the company to Halsted was not void in its inception, because unauthorized, is, I think, quite clear. It was formally authorized by a resolution of the board of directors, and I cannot doubt the board, as constituted, was competent to direct its execution. Their minutes show that a quorum was present when the resolution was passed; and, though the mortgagee was one of the directors who constituted the quorum, I am not prepared to say that, for such a reason, the board was incapable of authorizing the mortgage subsequently made. There is uncontradicted evidence that, in addition to the four directors whose names are noted upon the minutes, Mr. Grier, another director, was present at the meeting at which the resolution was adopted. Were it then conceded that Halsted had such an interest in the resolution that he was incompetent to vote for it, or

even to aid in constituting a quorum for corporate action upon it (which I doubt), there was a quorum without him, and a majority of the quorum must have voted for the resolution. Certainly no other director than Halsted had any disqualifying interest when the resolution was adopted, or when the mortgage was made. As the mortgage was given to cover only subsequent advances, it vested in the mortgagee merely a dry trust, which continued such until advances on the faith of it were afterwards actually made. Then, and then only, can any person besides be said to have had an interest either in the resolution or in the mortgage. The formal execution of the mortgage, therefore, as the contract of the company, must be treated as established.

And here I may remark it has not been seriously claimed that the mortgage is tainted with actual fraud: Fraud upon the company is not aperted, and certainly, in view of the evidence, it cannot be. I have, however, carefully gone over the proofs, and the result has been that I find nothing which would justify my coming to the conclusion that actual fraud upon the company, or upon any creditors of the company, was either perpetrated or intended. If, therefore, the mortgage is not available to the appellee as a security for the money advanced by him, it must be because it was given in contravention of some legal policy, or in conflict with some statute. Was it, then, inconsistent with any rule of legal policy? Halsted, the mortgagee, was a director of the company, and as such he was a trustee for the stockholders. I recognize in its broadest extent the principle that a trustee cannot contract, either directly or indirectly, with himself, for his own possible benefit, in relation to the property committed to his charge. I agree that all such contracts, even though untainted with actual fraud, are avoidable at the option of the cestui que trust. How far this rule is applicable to one of the several directors of a corporation aggregate, all of whom are, I admit, in an important sense, trustees of the rights and property of the corporation and of its stockholders, it is not necessary now to define. Conceding that it applies to all cases of purchase of the company's property by a director, to all cases of sale by him to the company, and generally to every contract in which his interest may be inconsistent with the interests of the company, it is still undoubtedly true that he may lend to the corporation, and take a valid security for the repayment of the loans. Such a contract is not one made for his benefit, in which his interests are adverse to those of his cestuis que trustent, and therefore the reasons why other contracts, made by persons sustaining fiduciary relations, and by which they may possibly secure benefits to themselves, are held avoidable, are wholly inapplicable to it. A contract of loan at legal rates of interest is one in which it is impossible for the lender

---

[1] [Not previously reported.]

to take undue advantages of the borrower. Nothing, I think, is more common than are loans made by directors of railroad, manufacturing, and other corporations to the companies of which they are directors; and it would be disastrous in the extreme were it held that such loans are against the policy of the law. Individuals are often elected directors because of their ability and supposed willingness to make pecuniary advances when needed. It is not unfrequently the case that loans can be obtained from no other source, and, if securities taken for such loans have not the same validity and effect as similar securities given to other creditors, the consequence must be the prostration of many business corporations, and the destruction of the interests of stockholders. And I know of no adjudicated case of authority that classes securities for loans of money taken by directors of joint-stock companies from the companies among those contracts which are avoidable because one of the parties stands in a fiduciary relation to the property respecting which the contracts are made. It is very certain that even a guardian, an executor or administrator may advance money for his cestui que trust, and thereby entitle himself to subrogation to the peace and right of the creditor whose claim he has paid. In such cases the law not only implies a contract to repay the money advanced, with interest, but it gives a preference. And surely an express engagement is not illegal when the duty undertaken thereby is implicitly recognized. Surely, if a director of a company may lend to it lawfully, he may take from it any of the ordinary securities for loans. It is, however, not worth while to spend time in showing that the mortgage to Halsted is not within the rule that a trustee cannot deal for his own advantage with the property held by him in trust, for, even if it is, it is not void. At most it is only avoidable, at the instance of the company or of the stockholders, in equity, and then only on repayment of the money advanced. The assignee in bankruptcy is doubtless clothed with the rights of the bankrupt company. If they could come into a court of equity to avoid the mortgages, so can he. But he must come as they must have come, doing equity, when he seeks it; and that is, repaying the money advanced. It is almost superfluous to say that a creditor of the mortgagors, in the absence of fraud, has no standing against the mortgage in a court of equity. The directors of the company are not trustees for him. Hence, though the assignee represents creditors as well as the bankrupts, it is as the representatives of the latter only that he can complain. He can only assert the rights which they had.

I proceed next to inquire whether the mortgage was forbidden by the statutes of New Jersey. The act of April 15, 1846, intended to prevent frauds by incorporated companies, enacted in its second section that whenever an incorporated company shall become in-solvent, or shall suspend the ordinary business of the said company for want of funds to carry on the same, it shall not be lawful for the directors or managers of the said company, or for any officer or agent thereof, to sell, convey, assign, or transfer any of the estate, effects, choses in action, goods, chattels, rights or credits, lands or tenements of the said company, nor shall it be lawful to make any such sale, conveyance, assignment, or transfer in contemplation of the insolvency of any such company; and every such sale, conveyance, assignment, or transfer shall be utterly null and void as against creditors. Other sections of the act make provision for winding up and distributing the assets of insolvent corporations. The whole statute is, in effect, a winding-up act. Whether it has been superseded by the general bankrupt law, I do not care to consider, because I am clearly of opinion that it has no applicability to the present case, even if in force. The evidence convinces me that at the time when the mortgage was given to the appellee the company had not suspended its ordinary business for want of funds to carry it on, or for any reason; nor had it become insolvent, within the meaning of the New Jersey statute. And it is clear the mortgage was not made in contemplation of insolvency. Undoubtedly there was embarrassment. There were debts becoming due, and some already due, which the company had not then the money to discharge. But they had property which, if converted into money, or hypothecated, was much more than sufficient to pay all the debts. And, instead of there having been any contemplation of insolvency the plain and only object for creating the mortgage was to enable the company to go on with its business. Whatever may be the meaning of the word "insolvent" in the bankrupt law, I cannot think the New Jersey legislature intended to treat embarrassment as insolvency, or to arrest the action of every corporation that might find it necessary to borrow money in order to meet its accruing obligations. Looking at the whole statute, I doubt not the word "insolvency" was designed to have its general and popular meaning, namely, the condition of having insufficient property to pay existing debts. Very plainly, such was not the condition of these mortgagors when their mortgage was given to the appellee. I think, therefore, the case is unaffected by the state enactment.

Nor was the mortgage invalid because of the provisions of the 35th and 39th sections of the bankrupt act [of 1867 (14 Stat. 534, 536)]. It was executed more than six months before the petition was filed under which the mortgagors were adjudicated bankrupts. It was not, therefore, a fraud against that act. Had it been actually fraudulent, the assignee might doubtless avoid it, irrespective of the time when it was made; but, in the absence of actual fraud, the right to set aside a preference is, I think, under our bankrupt

law, limited to transactions which took place within six months from the time when the proceedings which resulted in declared bankruptcy commenced. I come next to inquire whether I ought to declare the mortgage void because the mortgagee left the chattels in the possession of the mortgagors, and consented that they should sell and apply the proceeds of sale to the payment of other debts. This, it must be conceded, is always evidence of fraud, amounting sometimes to conclusive proof. But in this case the contract was made in New Jersey. There it was also to be performed, and I think, therefore, the legal effect upon the contract of established facts is to be regulated by the law of that state. The district judge has shown to my satisfaction that in New Jersey leaving the subject of a chattel mortgage in possession of the mortgagor does not necessarily establish that the instrument is fraudulent, nor does suffering the mortgagor to use or sell a portion of the hypothecated property. The articles sold are discharged from the lien of the mortgage; but it is a question of fact whether the transaction was covinous, so that the articles remaining unsold are also discharged. The conduct and agreement of the mortgagee are important in determining the intent with which the instrument was made, but they are admissible of explanation. I assent so entirely to the opinion of the district judge upon this part of the case that I deem it useless to discuss the matter at length. Meeting, then, the question as an inquiry of fact open to my decision whether the mortgage was a fraud either upon the company or upon creditors of the company, I am forced to the conclusion that it was not.

There remains but one question. It is whether the advancements made by Halsted are covered by the mortgage. It is plain that the mortgage was authorized. and given to cover only subsequent loans or advancements. Such is the purport of the resolution which authorized the instrument. But the evidence is satisfactory that Halsted, the appellee, advanced to the company, after the mortgage was given, more than $28,000; much more than the sum which he has been allowed to take. It is true that the money advanced was applied to the payment of debts, for which Halsted had previously become security. But for those debts the company was primarily liable, and payment of them secured the relief which was sought through the agency of the new loan. Certainly there was nothing in the resolution adopted by the board of directors that limited the application of any money which might be obtained on faith of the mortgage to any specified debts of the mortgagors, much less anything that even impliedly prohibited its devotion to uses in which the lenders might have an interest. I do not feel called upon to say more. Agreeing, as I do, so fully with the reasons which the district judge has given from his order, I regard it unnecessary to reiterate his opinion, and I therefore content myself with affirming the decree he made. The order of the district court is affirmed.